IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JAMES MCERNEST BRYANT                                                    PLAINTIFF

v.                                              CIVIL ACTION NO. 2:21-cv-00051-BWR

LT. ANDRE COOLEY, et al.                                               DEFENDANTS

MEMORANDUM OPINION AND ORDER DENYING
DEFENDANTS' MOTIONS [66 & 70]
FOR SUMMARY JUDGMENT

This matter is before the Court on Defendants Lieutenant Chiquita Caines and

Lieutenant Andre Cooley's Motions [66 & 70] for Summary Judgment. James

McErnest Bryant filed his lawsuit in April, 2021. Compl. [1]. Bryant is currently a

Mississippi Department of Corrections (MDOC) postconviction inmate housed at

Wilkinson County Correctional Facility (WCCF). Notice [64]. Bryant, proceeding *pro

se* and *in forma pauperis*, filed his civil action under 42 U.S.C. § 1983, alleging a

failure-to-protect claim against Defendants Lts. Cooley and Caines pertaining to an

inmate-on-inmate assault at Forrest County Regional Detention Center (FCDC). *See*

Compl. [1] at 1-3. Bryant filed at Response [74] to Defendants' Motions for Summary

Judgment [66 & 70] and Lt. Cooley a Reply [75]. Bryant then filed a second Response

[77]. Having considered the submissions of the parties, the record, and applicable law,

the Court finds that the Motions [66 & 70] for Summary Judgment should be denied.

## I.    BACKGROUND

On March 29, 2021, Bryant alleges that he was beaten and stabbed by other

inmates on Q-Pod at FCDC, and one of the inmates who assaulted him was Laquon

Fluker. Compl. [1]; Ex. [66-1] at 24. Bryant asserts that Defendants knew Fluker and other gang-affiliated inmates in Q-Pod posed a substantial risk of serious harm to him, and Defendants were deliberately indifferent to his need for protection. Compl. [1]; Ex. [66-1] at 24. Lieutenants Caines and Cooley maintain that Bryant was the aggressor and used threats of harm against his fellow inmates as leverage for a cell transfer. Def.'s Mem. [67] at 10; Def.'s Mem. [71] at 9. Lts. Caines and Cooley submit that Bryant had an ongoing verbal conflict with Fluker, voluntarily placed himself in harm's way, and "never notified anyone at [FCDC] that Plaintiff felt he was in danger or at risk of being seriously harmed/injured." Def.'s Mem. [67] at 10; Def.'s Mem. [71] at 9. They argue that Bryant's claims fail because he did not notify them that he feared a physical attack and in fact testified that he did not fear being physically attacked but assumed other inmates were using "scare tactics to make [him] get off the pod." Ex. 66-1 at 34.

Bryant's Complaint provides that "on or about the 12th of March, 2021 [Bryant] filed the first of approximately five (5) inmate requests/grievances, on the computerized kiosk on Q-Pod, in [FCDC], requesting to be moved from Q-Pod, because [he] felt that [his] life was in danger." Compl. [1] at 1. First, on March 23, 2021, Bryant wrote:

> LT CAINS OR LT COOLEY YOUR OFFICER 13 IS ANTAGGINIZEING ME AND SEVERAL OTHER INMATES SAYING STUFF LIKE HE ANT GOTTA WORRIE ABOUT NONE OF US B[*]TCH A[**] NI[**]AS HE GETS TO GO HOME EVERY DAY CAN YOU PLEASE DO SOMETHING ABOUT THIS MATTER BECAUSE IM REALLY THINKING ABOUT F[***]ING HIM UP IF THIS HAPPENS AGAIN.

Ex. [70-2] at 7. Lt. Caines reviewed the form and left a note saying that she would "look into th[e] matter." *Id.*

Next, Bryant, on March 24, 2021, filed another grievance: "i would like to red tag[1] laquan fluker and be moved to the time pod i signed for 8 yrs earlier this month and i need to be moved away from him before i hurt him really bad please please please!!!!!!!" *Id.* at 8. Bryant continued in the same grievance:

> PLEASE !!! ALLOW ME TO MOVE TO THE TIME POD I WILL BE ON MY BEST BEHAVIOR IM REALLY TRYING MY BEST NOT TO HURT THIS YOUNG GUY FLUKER AND YOU HAVE NEVER HAD ANY PROBLEMS OUTTA ME AND I WANNA KEEP IT THAT WAY PLEASE HELP ME LT.. I HAVE MY TIME ALREADY

*Id.* Bryant submitted another grievance on March 25, pleading "LT COOLEY you want have any problems outta me when you move me to G POD ive signed for my time and i will be on my best behavior i just wanna get away from the ignorance thats on this pod please help me asap." *Id.* at 9. Lt. Cooley responded about an hour later: "I have printed your request." *Id.*

Lt. Cooley replied to Bryant's March 24 grievance on March 26, asking "[c]an you tell me what is going on?" *Id.* Bryant did not respond to Lt. Cooley. *Id.* Also on March 26, Bryant submitted a grievance for Lt. Caines:

> LT CAINS IM SORRY FOR CURSING WHEN I WAS ASKING YOU ABOUT MOVING TO G POD I SIGNED FOR MY TIME EARLYIER THIS MONTH AND IM TRYING TO BE MOED AWAY FROM THIS POD I WANNA BE WHERE THEIRS PEOPLE WITH SINCE AND NOT SO CHILDISH I DON'T MIND IT NOT BEING A TV ON THAT POD I WILL BEHAVE YOU HAVE NEVER HAD A PROBLEM OUTTA ME AND YOU SURE WANT IF YOU ALLOW ME TO MOVE TO G POD

---

[1] Bryant testified that "[t]o red tag someone means to be put to where you will never come in contact with them." Ex. [66-1] at 49.

*Id.* at 10. Lt. Caines did not review this grievance until April 8, 2021. *Id.* Lt. Cooley, however, reviewed the grievance on the day it was posted and commented that he would "pass [the] message along." *Id.*

In his Omnibus Hearing testimony, Bryant clarified why he apologized in the above grievance. Ex. [66-1] at 32-33. Bryant testified that, during a one-on-one conversation with Lt. Caines, Bryant explained his "problems" and the threats made to him. *Id.* In response, Bryant said that Lt. Caines told him she would check on the issue for him but questioned his request because the Pod that he requested to be moved to did not have television. *Id.* at 32. This caused Bryant to say "I don't give a D that they don't have a TV over there. I'm trying to get off of this pod because I have been threatened by some guys on this pod." *Id.*

The only specific threat by other inmates prior to the attack that Bryant identified in his testimony was that one individual told him, "[w]e know you a police ass . . . and we going to get your behind if you stay on this pod." *Id.* at 33. Although Defendants claim Fluker made this threat, Bryant did not identify who made the threat in his testimony. *Id.* at 33-34; Mem. [67] at 5. Bryant testified that *he* interpreted this threat as mere "scare tactics." Ex. [66-1] at 34. Bryant also claimed to have verbally explained "the specifics" of the threats made to him to Lt. Cooley and Lt. Caines. *Id.*

Returning to Bryant's grievances, his next was on March 27, when he wrote, "its everytime im conversating with someone else he finds his way in the conversation to try to argue with me and continues to[ ]try to go back and forth with me

intentionally making my time hard . . . i am gonna snap and hurt this mf if it continues please move me." Ex. [70-2] at 11.

Lastly, on March 29, approximately two hours before the assault, Bryant filed a grievance:

> can you please move me im having problems with a few of these guys on this pod please help ive signed for my time earlyier this month ive asked several times now if I stabb one of these guys then it will be because of you all whos reading these messages and not doing nothing about my situation please help

*Id.* at 6.

Bryant asserts that "[n]obody called [him] out to investigate [his] claims, nor did they send [him] any response saying they were going to investigate them either." Compl. [1] at 2. Bryant claims that he spoke with Lt. Cooley, and "told him that [he] was being threatened, and needed to be moved from Q-Pod for safety reasons" and that "[e]ach time [Lt. Cooley told [Bryant] that he printed [his] requests/grievances, and that he submitted them to Lt. Caines. He stated he was waiting on her to respond to them." *Id.* Bryant contends that he also spoke to Lt. Caines "when she was making her rounds . . . and told her that inmates were threatening [him], and could she move [him] to another pod. She stated that she would check on it, but she never moved [him] nor did she further check on [him] to make sure that [he] was safe." *Id.*

On March 29, 2021, Bryant went into a cell after an inmate called him. In that cell, inmates, including Fluker, beat Bryant and stabbed him twice. *Id.* at 2-3; Ex. [66-1] at 24. Bryant's Complaint states that four inmates attacked him. Compl. [1]. In his Response he asserts that two inmates attacked him. P.'s Resp. [74] at 2. After

the assault, officers responded by locking the attacking inmates in their cells, calling a nurse to help Bryant, and moving Bryant to a different Pod. Compl. [1] at 2-3. It was only after the attack that Lt. Cooley responded to Bryant's last grievance, stating "[w]e have moved you. You did make me aware before and I passed that information along." Ex. [70-2] at 6.

Bryant's complaint asserts a failure-to-protect claim against Defendants. Compl. [1]. Defendants respond by arguing that Bryant cannot prove this claim on the facts and that qualified immunity protects them from suit. Mem. [67] at 9-17; Mem. [71] at 9-17.

## II.   STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quotation omitted). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131

(5th Cir. 1992). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and brackets omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with 'significant probative' evidence." *Id.* (quoting *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978)). "[A] nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012).

## III.   DISCUSSION

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome the defense of qualified immunity, a plaintiff must "first allege a violation of a clearly established constitutional right," and then "must . . . allege facts showing that the defendant's conduct was objectively unreasonable in the light of the law established at the time of the incident." *Carpenter v. Itawamba Co. Jail*, 597 F. Supp. 3d 977, 991 (N.D. Miss. 2022) (citing *Heitschmidt v. City of Houston*, 161 F.3d 834, 836-37 (5th Cir. 1998)). Qualified

immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (quotation and alterations omitted). "Ultimately, the touchstone is 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Shumpert v. City of Tupelo*, 905 F.3d 310, 321 (5th Cir. 2018) (quoting *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc)).

"Once an official pleads the defense of qualified immunity, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated a clearly established law." *Estate of Henson v. Wichita Cnty.*, 795 F.3d 456, 462 (5th Cir. 2015) (quotation and alterations omitted). "To defeat qualified immunity, a plaintiff must demonstrate that it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*." *Shumpert*, 905 F.3d at 321 (quotation omitted) (emphasis in original).

Here, Bryant alleges a failure-protect-claim under the Eighth Amendment. Compl. [1]. For each claim, Bryant must "show that he was 'incarcerated under conditions posing a substantial risk of serious harm, and that prison officials were deliberately indifferent to his need for protection.'" *Foreman v. Tomblin*, 75 F. App'x

227, 228 (5th Cir. 2003) (quoting *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998)). To act with deliberate indifference, a prison official must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and must draw that inference. *Newton*, 133 F.3d at 308. "Therefore, to state a valid failure-to-protect claim, [Bryant] must allege [Lts. Cooley and Caines] *knew* of a substantial risk of serious harm and failed to act" to protect him from that risk. *Vela v. Garcia*, 728 F. App'x 285, 287 (5th Cir. 2018) (emphasis in original) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-34 (1994)).

Defendants do not argue that Bryant has not alleged the violation of a clearly established constitutional right. Caselaw also supports that Bryant has alleged the violation of a clearly established constitutional right. *See Farmer*, 511 U.S. at 833; *Hare v. City of Corinth*, 74 F.3d 633, 638 (5th Cir. 1996). So, at the summary judgment stage, Bryant need only show a genuine dispute of material fact as to whether he has a failure-to-protect claim.

### A. A Genuine Issue of Material Fact Exists Regarding Whether Lieutenant Cooley was Deliberately Indifferent

At the summary judgment stage, Bryant has shown a genuine dispute of material fact as to whether Lt. Cooley was deliberately indifferent. When an inmate warns a prison official that they have been threatened and requests to be moved to an area separate from the person threatening them and are subsequently attacked, this Court has generally denied defendants' motions for summary judgment on failure-to-protect and qualified immunity claims. *See Leffew v. Peterson*, No. 1:19-cv-793-TBM-RPM, 2021 WL 3679236, at *4 (S.D. Miss. June 23, 2021), *R. & R. adopted*,

2021 WL 3192176 (S.D. Miss. July 28, 2021); *Jarvis v. Watson*, No. 3:17-cv-210-CWR-LRA, 2019 WL 3436885, at *5 (S.D. Miss. July 9, 2019), *R. & R. adopted*, 2019 WL 3430775 (S.D. Miss. July 30, 2019).

For example, in *Leffew v. Peterson* an inmate, Leffew, tried to sue several prison officials for failure-to-protect. *See* 2021 WL 3679236, at *1. Leffew alleged that he verbally requested to be moved to avoid a fight with another inmate, Leboue. *Id.* Shortly after the defendants denied Leffew's request, Leffew attempted to reconcile with Leboue. Leboue then struck him in the face. *Id.* At a screening hearing, Leffew explained that he almost fought with Leboue several times in the past and that his strained relationship with Leboue was well known around the jail. *Id.* Leffew also testified that he had previously made multiple oral and written complaints about Leboue wherein Leffew requested to be moved away from Leboue "before something happen[ed]." *Id.* at *1-2. The court denied the defendants' motion for summary judgment on Leffew's failure-to-protect claim and the defendants' qualified immunity defense. It reasoned that Leffew "told . . . Defendants about the 'situation' between himself and Leboue prior to the attack," despite that Leffew was "vague" on what he told each defendant. *Id.* at *4. Interpreting the evidence in a light favorable to Leffew, the court assumed that Leffew explained his entire history between himself and Leboue to the defendants. *Id.*

*Jarvis v. Watson* also addresses the issue now before the Court. In that case, three inmates assaulted Jarvis, who then sued various prison officials for failure-to-protect. *Jarvis*, 2019 WL 3436885, at *1. Jarvis testified under oath that, before the

10

attack, he had notified the defendants of his fear of an attack in writing. *Id.* at *3. He also used his written warning as evidence. *Id.* In his written warning, Jarvis told the warden that three inmates were "threatening" him. *Id.* at *3. The warden did nothing in response. Then, Jarvis was attacked. The court held that Jarvis' sworn testimony "that he gave notice of his fears" was "sufficient to create a genuine issue of material fact [as to] whether any [d]efendant had prior notice that Jarvis was in danger." *Id.* at *5. This defeated any raised qualified immunity defense at the summary judgment stage. *Id.*

Bryant's case is in line with those of the inmates in *Leffew* and *Jarvis*. *See Leffew*, 2021 WL 3679236, at *1-2, 4; *Jarvis*, 2019 WL 3436885, at *1, 3, 5. Like the inmates in *Leffew* and *Jarvis*, Bryant alleged in his complaint, and testified under oath, that he "explain[ed] the specifics" of the threats against him to Lt. Cooley. Compl. [1] at 2; Ex. [66-1] at 33-34; *see Leffew*, 2021 WL 3679236, at *1-2; *Jarvis*, 2019 WL 3436885, at *3. Lt. Cooley did nothing in response aside from "pass[ing]" one of Bryant's grievances along and printing one of Bryant's grievances. Ex. [70-2] at 9-10. These cases are instructive even if Bryant was "vague" on how he warned Lt. Cooley. Compl. [1] at 2; Ex. [66-1] at 33-34; *see Leffew*, 2021 WL 3679236, at *4. And Wilson's testimony at the Omnibus Hearing constitutes competent summary-judgment evidence. *E.g.*, *Falcon v. Holly*, 480 F. App'x 325, 326 (5th Cir. 2012) (concluding that "sworn testimony at [a] Spears hearing [is] . . . relevant to the court's summary judgment review"); *Evans v. Mississippi*, No. 2:11-cv-002, 2012 WL

4480731, at *4 n.3 (S.D. Miss. Sept. 26, 2012) ("[T]he Court considers . . . sworn testimony at the Spears hearing to be competent summary judgment evidence.").

Much of Lt. Cooley's argument is focused on Bryant's grievances and how these grievances show that Bryant saw himself as the potential aggressor rather than the one in danger. Mem. [71] at 9-13; Ex. [70-2] at 6-11. Lt. Cooley also points out Bryant's testimony at the Omnibus Hearing that Bryant saw the threats against him as "scare tactics" and not legitimate threats of violence. Mem. [71] at 10; Ex. [66-1] at 34. While this evidence supports Defendants' version of the events, Bryant has still created a genuine issue of material fact through his testimony and Verified Complaint on whether Lt. Cooley was subjectively aware of a substantial risk of serious harm to Bryant and whether Lt. Cooley was deliberately indifferent to this risk by failing to separate Bryant from Fluker. At this stage, it is not the Court's role to weigh conflicting evidence. *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 476 (5th Cir. 2022) (citing *Deville v. Marcantel*, 567 F.3d 156, 163-64 (5th Cir. 2009)).

Most persuasive is Lt. Cooley's argument based on *Campbell v. Dykes*. No. 3:17-cv-184-TSL-RHW, 2019 WL 2518153, at *2, 4 (S.D. Miss. Mar. 18, 2019), *R. & R. adopted*, 2019 WL 2518141 (S.D. Miss. June 18, 2019). *Campbell* states that "[a] prison official's mere knowledge of vague threats against an inmate is not sufficient to make it clear to the official that such information presents a substantial risk of serious harm to the inmate." *Id.* at *4 (citing *Williams v. Mgmt. & Training Corp.*, No. 5:16-cv-37-MTP, 2017 WL 8793429, at *3 (S.D. Miss. Nov. 2, 2017)). However, that case is distinguishable from Bryant's because there, the inmate had a general

fear of "Gangsters" at his facility rather than a fear of a specific inmate, like Bryant. *Id.* at *2; Ex. [66-1] at 33-34. Therefore, the Court finds that there is a genuine dispute of material fact as to whether Bryant has a failure to protect claim against Lt. Cooley.

### B. A Genuine Issue of Material Fact Exists Regarding Whether Lieutenant Caines was Deliberately Indifferent

For the same reasons as with Lt. Cooley, Bryant has shown a genuine dispute of material fact as to whether Lt. Caines was subjectively aware of a substantial risk of serious harm to Bryant and whether Lt. Caines was deliberately indifferent to that risk. Like with Lt. Cooley, Bryant alleged in his complaint, and testified under oath, that he "personally spoke to Lt. Caines . . . and told her that inmates were threatening [him]" and asked Lt. Caines whether he could be moved to another pod. Compl. [1] at 2; Ex. [66-1] at 33-34. All that Lt. Caines did in response to Bryant's complaints was tell him that she would "look into" his problems. Ex. [70-2] at 7; Ex. [66-1] at 32. There is no evidence she ever did.

## IV.   CONCLUSION

Having thoroughly reviewed and liberally construed Bryant's pleadings and testimony, along with the Motions [66 & 70] presently pending, the Court finds that Defendants' Motions [66 & 70] for Summary Judgment should be denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendants Lieutenant Chiquita Caines and Lieutenant Andre Cooley's Motions [66 & 70] for Summary Judgment are **DENIED**.

**SO ORDERED AND ADJUDGED,** this 10th day of July, 2023.

13

s/ *Bradley W. Rath*

BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE